**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHNIE M. CARTER, Plaintiff, v. JO ANNE B. BARNHART, Commissioner of the Social Security Administration, Defendant. | NO. CV 04-06479-SS **MEMORANDUM DECISION AND ORDER** |

Plaintiff seeks review of Defendant's decision denying her disability benefits, having filed a Complaint on August 6, 2004. Plaintiff is represented by Tom M. Siegel, Esq. Defendant is represented by Assistant United States Attorney Kathryn M. Ritchie. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on the parties' Joint Stipulation that was filed on April 12, 2005. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On September 16, 2002, Plaintiff, then age sixty, filed an application for Disability Insurance Benefits under Title II of the Social Security Act.[1] (Administrative Record ("AR") 42-44). Plaintiff alleged a disability onset date of August 14, 2001 on the basis of uncontrolled muscle spasms in her neck, back, legs, and feet. (AR 57). She further alleged that she could not sit or stand for long or short periods of time. (AR 57).

The Social Security Administration (the "Agency" or "Commissioner") denied Plaintiff's claim for benefits on November 25, 2002. (AR 25, 26-29). The Agency found that Plaintiff's condition was not severe enough to prevent her from working. (AR 26). Pursuant to the Agency's "test modifications" to the disability determination process, the reconsideration step of the administrative review process was eliminated. 20 C.F.R. § 404.906(b)(4). Plaintiff therefore requested a hearing by an Administrative Law Judge ("ALJ"). (AR 32).

A hearing before ALJ Zane A. Lang was conducted on May 22, 2003, at which Plaintiff appeared with counsel and testified. (AR 205-45). A vocational expert also testified.

On September 10, 2003, ALJ Lang issued a decision denying benefits. (AR 13-23). Plaintiff sought review of this decision before the Appeals

---

[1] Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-434 ("Federal Old-Age, Survivors, and Disability Insurance Benefits").

Council and submitted additional evidence. (AR 11, 185-87, 188-204). On June 25, 2004, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (AR 4-7). Plaintiff commenced the instant action on August 6, 2004.

## FACTUAL BACKGROUND

### A. Plaintiff's Relevant Medical History

Plaintiff developed back problems in August 2001, after lifting her father out of his wheelchair. (AR 161, 195, 222). From this time through May 2003, she underwent regular chiropractic therapy under Dr. Marc Nadreau. (AR 92-102, 161-64). On May 16, 2003, Dr. Nadreau's diagnosis with respect to Plaintiff's back was musculotendino-ligamentous sprain and strain of the lumbar spine. (AR 163).

Treatment notes from UHP Healthcare reflect that Plaintiff complained of low back pain during an office visit for a cough on January 17, 2002. (AR 118). She was diagnosed with a back strain and was prescribed Flexeril and Naprosyn. (AR 119). On March 18, 2002, Plaintiff indicated that her lower back felt better, but that she was having pains between her shoulder blades. (AR 116). An x-ray taken on April 5, 2002 of the cervical spine was consistent with muscle spasms in the neck. (AR 129). On July 29, 2002, Plaintiff complained of constant back spasms (that were partially relieved by the use of Flexeril) and noted that she was seeing a chiropractor. (AR 107). On September 23, 2002, she cited pain in her right thumb stemming from an

accident six months prior in which she fell on her right hand. (AR 105, 221).

Progress reports from UHP Healthcare dated October 25, 2002, January 9, 2003, and May 7, 2003 contain diagnoses of continuing low back spasms and right thumb pain, or "trigger finger." (AR 167-68, 174-75, 182-83). In the course of her treatment, Plaintiff was referred to King/Drew Medical Center for evaluation. (AR 177-78).

X-rays taken at King/Drew of both hands on April 11, 2003 demonstrated osteopenia of the bony structures in an otherwise normal examination.[2] (AR 157, 158). An MRI of the lumbar spine performed on April 28, 2003 indicated disc dessication with annulus fibrosus tear at L5-S1 without significant spinal canal stenosis.[3] (AR 154). On May 16, 2003, Plaintiff was reassessed with right thumb trigger finger at King/Drew and advised to wear a thumb brace at night. (AR 153). At this time, there was no gross deformity in her right thumb. (AR 153).

Plaintiff sought further treatment at King/Drew in late 2003 and early 2004 for her right thumb condition and for general hand pain. (AR 194, 195, 198, 199, 200, 201). Her thumb was injected with steroids and she was prescribed Naprosyn during this time. (AR 194, 195, 198, 199, 200, 201). On January 30, 2004, Plaintiff was seen at King/Drew's

---

[2] Osteopenia denotes decreased calcification or density of bone. Stedman's Medical Dictionary 1284 (27th ed. 2000).

[3] "L" is an abbreviation for lumbar vertebrae (L1 to L5). Stedman's Medical Dictionary 956 (27th ed. 2000). "S" is an abbreviation for sacral vertebrae (S1-S5). Id. at 1586. Stenosis is a stricture of any canal or orifice. Id. at 1695.

neuroscience outpatient clinic. (AR 195). At this time, her main problem was described as "joint pain." (AR 195). The neuroscience report noted that Plaintiff no longer experienced "trigger thumb" post-injection. (AR 195). It also noted that her earlier MRI was "nonoperative." (AR 195). No follow-up with neurosurgery was recommended unless Plaintiff's lumbar disc worsened. (AR 195).

**B. Consultative Examination**

On October 31, 2002, Plaintiff underwent a consultative internal medicine examination by Dr. John Sedgh. (AR 131-38). To the extent that the Court's analysis of Plaintiff's claims requires discussion of the consultative examination, it will be provided below.

**C. Plaintiff's Testimony**

At the hearing before the ALJ, Plaintiff testified that she last was employed in December 2000, when the company for which she worked as a supervisory document preparer ceased operations. (AR 212-219, 223). Plaintiff explained that the company was supposed to have been acquired by another entity and reopened, but ultimately the company did not reopen. (AR 223).

Plaintiff indicated that she did not seek further employment because of the onset of her back problems in August 2001, at which time she sought medical treatment. (AR 222, 224). She also described her right thumb problem, in which she could not bend her thumb at the joint. (AR 227). Plaintiff explained that this condition precluded her from

using the computer for extended lengths of time, as she formerly did in her previous position. (AR 227-28). According to Plaintiff, she had no strength in her right hand and could not grasp anything with it. (AR 229, 230). Plaintiff did not believe that she could hold a simple sedentary job. (AR 229-30).

**D. The Vocational Expert's Testimony**

Ms. Sandra Trost testified at the hearing as a vocational expert. She identified Plaintiff's past relevant work as checker II (a clerical post), production clerk, correspondence review clerk, classification clerk, and payroll clerk. (AR 233-35). Among the hypotheticals posed by the ALJ to Ms. Trost was one involving an individual of the same age, education,[4] and work experience as Plaintiff who could (1) lift twenty pounds occasionally and ten pounds frequently,[5] (2) sit, stand, or walk for six out of eight hours, and (3) frequently (but not constantly) perform fingering and handling with the right upper extremity. (AR 236-37). Ms. Trost stated that such an individual could perform all of Plaintiff's past work. (AR 237).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her

---

[4] Plaintiff indicated on her disability report that she had completed twelfth grade. (AR 63).

[5] These weight limitations represent the Agency's formulation of light work. 20 C.F.R. § 404.1567(b).

from engaging in substantial gainful activity[6] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
(4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five.

---

[6] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 404.1510.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. § 404.1520(a)(4).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[7] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520(g). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable, and the ALJ must take the testimony of a

---

[7] Residual functional capacity is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a).

vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**THE ALJ'S DECISION**

At the first step of the sequential evaluation process, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (AR 17). Next, the ALJ found that Plaintiff had the following medically determinable impairments: (1) hypertension, controlled, (2) right thumb trigger, and (3) sprain/strain of the lumbar spine. (AR 18). All of these impairments were severe.[8] (AR 18).

At the third step, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). In the fourth step of his analysis, the ALJ weighed the medical evidence in determining Plaintiff's residual functional capacity. (AR 18-21). The ALJ concluded that Plaintiff was capable of (1) lifting ten pounds frequently and twenty pounds occasionally and (2) sitting, standing, and/or walking for six hours out of an eight-hour period. (AR 21). He also concluded that Plaintiff could perform frequent, but not constant, handling and fingering with her right dominant upper extremity. (AR 21). In analyzing Plaintiff's residual

[8] An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities, which include walking, standing, sitting, and lifting. 20 C.F.R. § 404.1521.

functional capacity, the ALJ considered Plaintiff's subjective complaints of pain, but did not find them totally credible. (AR 21).

Having addressed Plaintiff's functional limitations, and based on testimony by the vocational expert, the ALJ found that Plaintiff was able to perform her past work. (AR 21-22). Accordingly, the ALJ determined that Plaintiff was not disabled, and a step five inquiry whether Plaintiff was able to perform some other work was unnecessary. (AR 22).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff argues that the ALJ did not properly evaluate: (1) her credibility, (2) her use of medications and their side effects, (3) her residual functional capacity ("RFC"), and (4) the treating source opinion. She further contends that the ALJ improperly disregarded the vocational expert's testimony and that the ALJ failed to properly use the Grids. The Court disagrees in all respects.

**A. The ALJ Properly Evaluated The Credibility Of Plaintiff's Subjective Symptoms**

Generally, a claimant's credibility becomes important at the stage where the ALJ assesses residual functional capacity because the claimant's subjective statements may denote greater limitations than can medical evidence alone. Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling 96-7p). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. Id. (citing Fair, 885 F.2d at 602). Rather, the ALJ "must give specific, convincing reasons for rejecting the claimant's subjective statements." Id. at 1148 (citing Fair, 885 F.2d at 602); see also Lester v. Chater,


81 F.3d 821, 834 (9th Cir. 1995) (requiring "'specific, cogent reasons for the disbelief'") (citation omitted).

With respect to Plaintiff's subjective symptoms, the ALJ remarked:

> As is evident from the claimant's testimony and her complaints to various physicians, the primary basis on which disability is alleged is disabling pain. In this case, her complaints, though appearing to be out of proportion to the minimal objective findings, may not be rejected solely due to the lack of objective medical evidence which would fully corroborate the alleged severity of the pain. Therefore, other factors, such as daily activities, must be considered. The claimant has reported in several medical reports that she walks for exercise. Her written testimony indicates that she walks for 12 blocks, albeit with hard breathing and legs tingling. She is able to climb stairs about 10 steps before her legs ache. She is able to do laundry twice a week and is able to lift one gallon of water and milk daily. She does her own grocery shopping along with her husband and daughter. She cleans her own house, including dusting, polishing and cleaning the bathroom. She and her husband change the bed together. She does some yard work. She drives to appointments and to church. She is able to take care of her own personal needs. The claimant's level of activity is not inconsistent with work at the light exertional level.

(AR 21).

The ALJ did not reject plaintiff's subjective complaints based solely on a lack of medical evidence, but instead looked at other factors. See, e.g., Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Furthermore, it was permissible for the ALJ to consider daily living activities in his credibility analysis, Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005), and these activities, as set forth in Plaintiff's "Exertional Daily Activities Questionnaire," were accurately summarized by the ALJ. (AR 77-79).

The ALJ's credibility determination rested on multiple grounds supported by the record. For example, the ALJ observed that Plaintiff was treated for a cough on May 22, 2002, at which time she denied any other complaints—despite her preexisting low back problems and having fallen on her right hand in March 2002. (AR 19, 110, 221). Notably, the March 2002 accident was the very basis for her right thumb pain, of which she first complained on September 23, 2002. (AR 105). As also observed by the ALJ, Plaintiff did not report any complaints about her thumb to Dr. Sedgh, the consultative physician who examined her seven months after her fall, on October 31, 2002.[9] (AR 20, 131-38). Finally, and as cited by the ALJ, though Plaintiff began chiropractic care for her low back pain in August 2001 (soon after she began experiencing it), she did not complain of back pain to her physician until January 17, 2002.[10] (AR 20, 118).

---

[9] Dr. Sedgh, in fact, found that Plaintiff's grip was normal and that finger approximation was intact. (AR 134).

[10] At the hearing, Plaintiff testified that she unsuccessfully tried to obtain an appointment with her medical doctor. (AR 224). However, Plaintiff saw her medical doctor as early as November 5, 2001, when she was treated for a cough and nasal congestion, and back pain was

In sum, the ALJ provided adequate rationale for discrediting Plaintiff's statements regarding her symptoms.[11] The ALJ's reasons for his credibility findings were specific and accurately reflected the record. Under these circumstances, where these findings are supported by substantial evidence in the record, the Court cannot engage in "second-guessing."[12] Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citing Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999)).

**B. The ALJ Properly Determined Plaintiff's Residual Functional Capacity**

As noted above, the ALJ concluded that Plaintiff was capable of (1) lifting ten pounds frequently and twenty pounds occasionally and (2) sitting, standing, and/or walking for six hours out of an eight-hour period. (AR 21). He also concluded that Plaintiff could perform frequent, but not constant, handling and fingering with her right dominant upper extremity. (AR 21). Contrary to Plaintiff's assertions, the ALJ's determination of this RFC is without error. Not only is it supported by the propriety of the ALJ's credibility analysis, as

---

not among her complaints at this time. (AR 120).

[11] Included among Plaintiff's statements were side effects from her various medications. (AR 79, 81). Plaintiff contends separately that the ALJ failed to properly evaluate these side effects. The Court, however, agrees with the Commissioner that this argument is subsumed by the broader credibility issue. Accordingly, it need not be separately addressed.

[12] The Court notes that the ALJ did not wholly reject Plaintiff's subjective symptoms. He expressly stated that Plaintiff's residual functional capacity "does include limitations which show that the claimant's allegations have not been totally disregarded or rejected." (AR 21).

discussed above, but also by the consultative examination and the additional medical evidence submitted by Plaintiff to the Appeals Council.

Dr. Sedgh conducted his consultative examination on October 31, 2002. (AR 131-38). There was no evidence of inflammation or deformity in Plaintiff's upper or lower extremities, and range of motion was within normal limits in these areas. (AR 133-34). There was no evidence of muscle spasm or tenderness in the cervical spine, where range of motion was also within normal limits. (AR 133). Back flexion was 70/90 degrees, though a straight leg raising test was negative. (AR 133). Strength was 5/5 in all extremities, and Plaintiff walked without any assistive walking device. (AR 134, 135). Dr. Sedgh's diagnoses were hypertension and low back pain. (AR 135). He believed that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently. (AR 135). He also felt that Plaintiff could sit, stand, and walk for six out of eight hours and that she had no postural or manipulative limitations. (AR 135). Dr. Sedgh's opinions were based on independent clinical findings, including an x-ray of the lumbosacral spine that revealed no abnormalities. (AR 136). In this situation, a consultative report alone may furnish substantial evidence for the ALJ's decision.[13] Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of a nontreating source based on independent clinical findings may itself be substantial evidence) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

---

[13] Dr. Sedgh's opinion actually supports an RFC more restrictive than that found by the ALJ, i.e., medium rather than light. See 20 C.F.R. § 404.1567(c).

The medical evidence submitted by Plaintiff to the Appeals Council provides further support for the ALJ's RFC determination. (AR 188-204). This evidence reflects the treatment received by Plaintiff at King/Drew Medical Center in late 2003 and early 2004 for her right thumb condition and for general hand pain. (AR 194, 195, 198, 199, 200, 201). Her thumb was injected with steroids and she was prescribed Naprosyn during this period. (AR 194, 195, 198, 199, 200, 201). On January 30, 2004, Plaintiff was seen at King/Drew's neuroscience outpatient clinic. (AR 195). At this time—which was approximately thirty-one months beyond the alleged onset of her disability based on muscle spasms—her main problem was limited simply to "joint pain." (AR 57, 195). The neuroscience report noted that Plaintiff no longer experienced "trigger thumb" post-injection. (AR 195). It also noted that her earlier MRI was "nonoperative." (AR 195). No follow-up with neurosurgery was recommended unless Plaintiff's lumbar disc worsened. (AR 195).

In short, the ALJ properly assessed Plaintiff's RFC. The foregoing medical evidence, combined with such other evidence of record as Plaintiff's normal hand x-rays (AR 157, 158) and the absence of any gross deformity in her right thumb (AR 153), serves to furnish adequate support for it.

**C. <u>The ALJ's Decision Does Not Violate The Treating Physician Rule</u>**

Even if contradicted, a treating doctor's opinion may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. <u>Rollins v. Massanari</u>, 261 F.3d 853,

856 (9th Cir. 2001) (citing Reddick, 157 F.3d at 725); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Plaintiff argues that the ALJ discounted the opinion of her treating physician.

As pointed out by the Commissioner, however, Plaintiff does not direct the Court to any opinion by a treating physician that was improperly rejected or rejected at all by the ALJ. Indeed, the ALJ asserted only that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (AR 21). Thus, it was not the case that the ALJ rejected any opinion of a treating-level doctor, but rather that he found these opinions to be consistent with his ultimate determination that Plaintiff was not disabled. Accordingly, the ALJ's decision does not violate the "treating physician" rule.[14]

**D. The ALJ Did Not Improperly Disregard Any Testimony By The Vocational Expert**

A hypothetical posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant. Light

[14] To the extent that the ALJ expressly criticized any opinion by a treating source, he observed that "[t]he unsupported findings reported by the chiropractor suggest that he was acting as an advocate for the claimant rather than just treating her for her alleged symptoms and limitations." (AR 20). Chiropractors, however, are not "acceptable medical sources" that are entitled to the same weight given to treating physicians. 20 C.F.R. §§ 404.1513(a) & (d).

v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citing Andrews, 53 F.3d at 1044); see also Magallanes, 881 F.2d at 756 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). Plaintiff urges that the ALJ improperly disregarded testimony by the vocational expert, given in response to one of the ALJ's hypotheticals, that Plaintiff could not return to her past work.

The flaw in Plaintiff's argument is that this testimony was given in reply to a hypothetical by the ALJ that did not incorporate the ultimate RFC assigned to Plaintiff. The Court has already concluded that the ultimate RFC was proper. When the ALJ posed the hypothetical that was consistent with this RFC, the vocational expert's testimony was that Plaintiff could return to her past work. (AR 237). This latter testimony was therefore the logical testimony to credit, and by virtue of doing so, the ALJ did not improperly disregard any other testimony by the vocational expert.

**E. The ALJ Did Not Improperly Utilize The Grids**

Plaintiff's final contention is that the ALJ failed to properly use "the Grids," or the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2. As explained above, the Grids are utilized in the sequential evaluation process only at step five, where the Commissioner must show that the claimant can perform some other work that exists in significant numbers in the national economy if Plaintiff is unable to perform any of her past work.

Here, the ALJ determined at step four that Plaintiff was able to perform her past work. (AR 21-22). Thus, it was not necessary for him to proceed to step five. Accordingly, the ALJ had no need to rely on the Grids in his decision, and Plaintiff's argument that he improperly used them is without merit.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 15, 2005.

/s/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE